## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS FERRARO | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No.:21-4267 |
| v. | : | |
| | : | |
| CECO ENVIRONMENTAL CORP. et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

### FIRST AMENDED CIVIL ACTION COMPLAINT

Thomas Ferraro (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by CECO Environmental Corp., Met-Pro Technologies, LLC, and CECO Fybroc d/b/a Fybroc (*hereinafter* collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et seq*.), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.     Plaintiff resides in and is a citizen of Pennsylvania.

3.     Upon information and belief, Defendant CECO Environmental Corp is incorporated under the laws of Texas with headquarters and/or principal place of business in same, rendering it a citizen of Texas.

4.      Upon information and belief, Defendant Met-Pro Technologies, LLC is incorporated under the laws of Delaware with headquarters and/or principal place of business in Harleysville, Pennsylvania, rendering it a citizen of Pennsylvania.

5.      Upon information and belief, Defendant CECO Fybroc d/b/a Fybroc is incorporated under the laws of Pennsylvania with headquarters and/or principal place of business in same, rendering it a citizen of Pennsylvania.

6.      This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, and Defendants are citizens of Texas and Pennsylvania, and the amount in controversy exceeds $75,000.

7.      This action is also being initiated pursuant to federal laws (ADA and ADEA) and therefore, the United States District Court for the Eastern District of Pennsylvania also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

8.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

9.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants conduct business in this judicial district and because a substantial

2

part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

10.     Plaintiff filed Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charges with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charges with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     Plaintiff is an adult individual, with an address as set forth in the above caption.

13.     CECO Environmental Corp (*hereinafter* "Defendant CECO") is a corporation operating in the energy, environmental air pollution control, and fluid handling and filtration industry throughout several states in the United States (including Pennsylvania), with an address as set forth in the above caption.

14.     Met-Pro Technologies, LLC (*hereinafter* "Defendant Met-Pro") is a corporation operating in the fluid handling, product recovery and pollution control equipment industry in several states in the United States (including Pennsylvania), with headquarters as set forth above. Upon information and belief, Defendant CECO acquired, owns and provides management, personnel and/or human resources support to Defendant Met-Pro. Defendant Met-Pro was listed as Plaintiff's employer on his paystubs and W-2 forms.

3

15.     CECO Fybroc d/b/a Fybroc (*hereinafter* "Defendant Fybroc") is a corporation which designs and manufactures fiberglass reinforced polymer pumps in Pennsylvania, with an address as set forth in the above caption. Plaintiff physically worked at the address for Defendant Fybroc.

16.     Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

17.     At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

18.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

19.     Plaintiff was employed with Defendants for approximately 13.5 years (including predecessor companies) as a machinist, working out of the Defendant Fybroc location at 700 Emlen Way, Telford, PA.

20.     Plaintiff is a 64-year-old male, and one of the oldest employees at Defendants' Telford, PA location.

21.     At the time of Plaintiff's termination, he was primarily supervised by Machine Shop Supervisor, Ronald LaDieu (hereinafter "LaDieu") and Plant Manager, Anthony Carbo (hereinafter "Carbo").

22.     During the latter part of Plaintiff's tenure and until termination, Plaintiff began to notice that Defendants' management appeared to be targeting older employees for termination or discipline, favoring younger employees, and exhibited discriminatory animus toward Plaintiff and other older employees because of their advanced age.

23.     For example, unlike Defendants' younger employees, members of management:

   a.   treated Plaintiff in a rude and demeaning manner;

   b.   criticized and scrutinized Plaintiff's work;

   c.   unfairly issued older employees pretextual discipline in an effort to push them out and/or terminate them; and

   d.   LaDieu made disparaging age-related comments to Plaintiff, including calling him an "old man" on multiple occasions.

24.     In addition to being subjected to discrimination because of his age, Plaintiff was also subjected to discrimination and retaliation because of Plaintiff's serious health conditions.

25.     Plaintiff has and continues to suffer from several disabilities, including but not limited to diabetes, hypertensions, and back and knee conditions (requiring periodic shots for pain/lubrication – as well as a future knee replacement).

26.     Despite these health conditions and limitations, Plaintiff was still able to perform the essential functions of his position well. However, Plaintiff did require some reasonable accommodations, such as intermittent time off for doctor's appointments and injections, and to care for and treat Plaintiff's serious health conditions.

27.     While Defendants did accommodate some Plaintiff's initial doctor's visits, Plaintiff was still subjected to hostility and animosity whenever Plaintiff took time for medical reasons.

28.     For example, but not intended to be an exhaustive list: (1) Plaintiff was issued attendance points for taking time off for his disabilities, despite the fact that same was ADA-qualifying leave, and that Plaintiff provided doctors notes and documentation for same; (2) Plaintiff was punished for taking time off for his health conditions by having his work redirected (sent out or taken away from him); and (3) Plaintiff was denied the opportunity for overtime because of Plaintiff's need for time off for medical reasons.

29.     Plaintiff continued to require accommodations throughout 2020. For example, in or about the end of March of 2020 until on or about May 6, 2020, Plaintiff utilized FMLA leave for serious health concerns, for which Plaintiff provided doctor's notes and documentation.

30.     Plaintiff returned to work on or about May 7, 2020, and continued to work hard for Defendants and perform his job well.

31.     Later, in or about mid-November of 2020, Plaintiff again put Defendants on notice that Plaintiff required ADA and/or FMLA-qualifying leave for his serious health conditions.

32.     However, while on ADA and/or FMLA-qualifying leave, Defendants' management harassed Plaintiff regarding documentation for medical testing and his need for time off, and stated that they believed there were "discrepancies" that needed "clarification."

33.     Plaintiff then returned to work on or about November 30, 2020.

34.     Plaintiff continued to work for about one week before Defendants' management informed Plaintiff on or about December 7, 2020, that they required even more documentation and "clarification" for the time that Plaintiff had taken off for medical reasons.

35.     However, despite that fact that Plaintiff responded to all of Defendants' requests for information and "clarification," Defendants thereafter failed to communicate with Plaintiff

6

whatsoever and not once during this time period ever informed Plaintiff that Defendants still needed any additional information regarding his leave.

36.     Plaintiff was abruptly terminated on or about December 22, 2020 for allegedly "accumulating too many points," which included points assessed for ADA and FMLA-qualifying leave.

37.     Therefore, Plaintiff believes and avers that he was terminated because of (1) his age; (2) his known and/or perceived disabilities; (3) his record of impairment; (4) his requested accommodations; and/or (5) Defendants failure to properly accommodate Plaintiff.

## COUNT I
## <u>Violations of the Americans with Disabilities Act, as Amended ("ADA")</u>
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**
**-Against All Defendants-**

38.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39.     Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

40.     Plaintiff kept Defendants management informed of his serious medical conditions and need for medical treatment and other accommodations.

41.     Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well; however, Plaintiff did require reasonable medical accommodations at times.

42.     Plaintiff requested reasonable accommodations such as intermittent time off for doctor's appointments and injections and to care for and treat Plaintiff's serious health conditions.

43.     Plaintiff was terminated from his employment in close proximity to his requests for/utilization of reasonable accommodations.

44.     Plaintiff believes and therefore avers that he was terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; and/or (4) Defendants failure to properly accommodate Plaintiff.

45.     These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**([1] Retaliation & [2] Interference)**
**-Against All Defendants-**

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

48.     Plaintiff requested leave from Defendants with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

49.     Plaintiff had at least 1,250 hours of service with Defendants EEL and LMTL during his last full year of employment.

50.     Defendant are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

51.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

52.     Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-

qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) by making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising him rights under the FMLA.

53.     These actions as aforesaid constitute violations of the FMLA.

**COUNT III**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**([1] Age Discrimination and [2] Hostile Work Environment)**
**-Against All Defendants-**

54.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55.     Plaintiff was treated disparately with respect to work and policies, had made comments about his age by Defendants, and his termination was contrary to individuals substantially younger than him, which occurred on or about December 22, 2020.

56.     Upon information and belief, after Plaintiff was terminated, his work for Defendants has been performed by much younger, less experienced individuals who do not possess the level of qualifications and seniority Plaintiff had obtained working with Defendants.

57.     Therefore, Plaintiff believes and avers that he was terminated because of his advanced age.

58.     These actions as aforesaid constitute unlawful age discrimination and retaliation under the ADEA.

**COUNT IV**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**
**-Against All Defendants-**

59.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60.     Plaintiff reasserts each and every allegation from Count I of this First Amended Complaint, as such constitute identical violations of the PHRA.

**COUNT V**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Age Discrimination and [2] Hostile Work Environment)**
**-Against All Defendants-**

61.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62.     Plaintiff reasserts each and every allegation from Count III of this First Amended Complaint, as such constitute identical violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.    Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    */s/ David N. Korsen*
David N. Korsen, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020

Dated:  5/9/2022

11